IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-02187-CNS-KAS

ANDRU KULAS,

    Plaintiff,

v.

CITY OF FORT COLLINS,
KEVIN PARK, Fort Collins Police Officer, in his individual capacity and
AVERY HANZLICEK, Fort Collins Police Officer, in his individual capacity,

    Defendants.

## ORDER

Before the Court is Defendants' fully briefed Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 61, 73, 83. The Court GRANTS IN PART and DENIES IN PART Defendants' motion. In doing so, the Court presumes familiarity with this case's procedural background, the parties' summary judgment briefing and attendant evidentiary submissions, as well as the legal standards governing the Court's analysis of Defendants' motion. *See, e.g.,* Fed. R. Civ. P. 56; *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010).

### I.    BACKGROUND

A brief summary of undisputed material facts, drawn from the parties' briefing and attendant evidentiary submissions, suffices. The Court discusses material factual

1

disputes identified by the parties, as well as what a reasonable jury could find based on the summary judgment record, in the Court's analysis of Defendants' motion below.

Defendants Park and Hanzlicek are Fort Collins police officers. *See* ECF No. 73 at 4. At approximately 1:50 a.m. on August 29, 2021, they encountered Plaintiff Andru Kulas in Old Town Fort Collins, in response to a call alleging third-degree trespass. *See, e.g., id.* Following this encounter, Defendant Hanzlicek began writing Plaintiff a citation and summons for third-degree trespass. *See id.* Plaintiff backed away from Defendants Park and Hanzlicek, refusing to accept the citation. *See id.* From here, the parties dispute whether—or to what extent—Defendants Park and Hanzlicek exerted force over Plaintiff before handcuffing him and spraying his eyes with oleum capsicum (OC) spray. *See, e.g., id.* at 7. It is undisputed that Defendant Park received training on how to safely use OC spray on individuals. *See id.*

## II.     ANALYSIS

Seeking summary judgment, Defendants argue

- Plaintiff "has no evidence" supporting his first two claims for false imprisonment and false arrest,

- Plaintiff "has no evidence" supporting his excessive force claims,

- Plaintiff lacks evidence "supporting any argument [he] was arrested for his alleged criticism" of Officer Park, compelling dismissal of his First Amendment claim,

- Plaintiff's claims are "barred" by qualified immunity, and

- Plaintiff "has no evidence" supporting municipal liability against the City.

ECF No. 61 at 12, 18, 24, 26. The Court considers Defendants' arguments below.

2

### A. False Arrest and False Imprisonment

According to Defendants, probable cause "existed to arrest Plaintiff for criminal trespass," *id.* at 13, Defendants Park and Hanzlicek (the Officer Defendants) had "discretion to arrest" Plaintiff for criminal trespass, *id.*, and the Officer Defendants had "probable cause to arrest" Plaintiff for "Obstruction and Resisting," *id.* at 15. Therefore, summary judgment on Plaintiff's false arrest and false imprisonment cases is warranted. *See, e.g., id.* The Court agrees with Defendants that summary judgment on Plaintiff's false arrest, false imprisonment, and arrest without probable cause—Plaintiff's first two claims—is proper.

Defendants seek summary judgment on Plaintiff's first claim for relief, *see id.* at 13, for a "[Fourth] Amendment Violation" under 42 U.S.C. § 1983, ECF No. 1 at 25. Plaintiff concedes that probable cause existed to "arrest and release" him "on summons for petty trespass . . ." ECF No. 73 at 20. This concession is dispositive of Plaintiff's false arrest and false imprisonment claims. "[S]o long as there is probable cause to arrest for one crime, it does not matter whether there is probable cause to arrest for another crime." *Powelson v. Sausalito Police Dep't*, No. 23–cv–01360–EMC, 2025 WL 2578206, at *7 (N.D. Cal. Sept. 7, 2025). *See also Linn v. Garcia*, 531 F.2d 855, 862 (8th Cir. 1976) ("[W]hen a peace officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, and it is immaterial that the officer may have thought, without probable cause, that the defendant was committing or had committed other offenses as well."); *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025) ("[U]nlike Fourth Amendment claims of *false arrest*, in the Fourth

3

Amendment malicious prosecution context, probable cause must support each charge brought by the prosecution." (citation modified)); *Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020); *Marrs v. Boles*, 51 F. Supp. 2d 1127, 1135 (D. Kan. 1998), *aff'd*, 176 F.3d 488 (10th Cir. 1999) ("If probable cause exists as to one charged crime, whether the police had probable cause to arrest for other crimes is irrelevant.").

At bottom, "probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673, 682 (7th Cir. 2007) (citation modified)). Accordingly, Plaintiff's argument that—even with probable cause to arrest for petty trespass, such probable cause as to this trespass does not automatically confer probable cause to arrest Plaintiff for any subsequent act—fails to persuade. *See, e.g.,* ECF No. 73 at 21 ("Probable cause to arrest someone for one offense at one time does not equate to indefinite authority to arrest that person for that offense for all of time.").

Therefore, the Court grants summary judgment in favor of Defendants on Plaintiff's first and second claims for relief for false arrest, false imprisonment, and arrest without probable cause.

**B. Excessive Force**

The parties dispute whether summary judgment on Plaintiff's excessive force claims is proper. *Compare* ECF No. 61 at 18, *with* ECF No. 73 at 23. Explained below, it is not. Notably, the parties agree on the doctrinal framework applicable to the Court's analysis of Plaintiff's false arrest claims. *See, e.g., id.* (citing *Graham v. Connor*, 490 U.S.

4

386 (1989)). But, explained below, application of that framework does not demand summary judgment on Plaintiff's excessive force claims, as a reasonable jury could find that Defendant Park used excessive force against Plaintiff, based on material factual disputes that exist in the summary judgment record.

As a preliminary matter, Defendants urge application of what they call a "segmented analysis" of Plaintiff's excessive force claims. ECF No. 61 at 19; ECF No. 83 at 12. Defendants define this as "look[ing] at the objective reasonableness of the use of force at the 'precise moment' it occurs." ECF No. 61 at 19. The Supreme Court recently explained how courts analyze excessive force claims: "To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment." *Barnes v. Felix*, 605 U.S. 73, 76 (2025); *see also id.* at 80 ("[I]n-the-moment facts cannot be hermetically sealed off from the context in which they arose." (citation modified)). Defendants do not contend with this authority and the Court is bound by it. *See, e.g., Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023). Accordingly, the Court declines Defendants' invitation to apply a "segmented analysis" in its discussion of Plaintiff's excessive force claim.

This argument dispensed, turn now to Defendants' argument that "[t]here was no use of force to effectuate the arrest," ECF No. 61 at 20, and that "the *Graham* factors favor the individual Defendants," *id.* at 22. But as explained below, and upon considering the *Graham* factors, the Court disagrees.

**Severity.** The first *Graham* factor considered the "severity of [Plaintiff's] crime." *Est. of Harmon v. Salt Lake City*, 134 F.4th 1119, 1122 (10th Cir. 2025) (citation modified).

5

Defendants acknowledge, as they must, that both crimes Plaintiff purportedly committed—obstructing a peace officer and resisting arrest—are misdemeanors. *See* ECF No. 61 at 20; *Surat v. Klamser*, 52 F.4th 1261, 1274 (10th Cir. 2022) ("In Colorado, obstructing a peace officer and resisting arrest are both class 2 misdemeanors." (citation modified)); C.R.S. § 18–8–104(1)(a) (setting forth obstruction misdemeanor); C.R.S. § 18–8–103(1) (setting forth resisting arrest misdemeanor). Yet despite—or because—these are misdemeanor offenses, a reasonable jury could find that Officer Park used excessive force against Plaintiff. Although Defendants argue it is an undisputed fact that Plaintiff and the Officer Defendants "went to the ground," ECF No. 61 at 4, a reasonable jury could find that, in Plaintiff's words, "Officer Park threw [Plaintiff] to the pavement [and] Officers Ortiz and Hanzlicek assisted," ECF No. 73 at 6. *See, e.g., Jordan v. Jenkins*, 73 F.4th 1162, 1172 (10th Cir. 2023), *cert. denied sub nom. Donnellon v. Jordan*, 144 S. Ct. 1343 (2024) ("Under the first *Graham* factor, a minor offense supports *only* the use of *minimal* force." (citation modified)).

Defendants' argument that the first *Graham* factor weighs in their favor because "[b]oth crimes involve the threatening or use of violence or force," ECF No. 61 at 20, fails to persuade. *See Surat*, 52 F.4th at 1274. A reasonable jury could certainly find, based on clear and material factual disputes, that Plaintiff "committed both crimes in a particularly harmless manner," *id.* (citation modified), given *at most* Defendants contend it is undisputed that Plaintiff simply "swiped at" Officer Park's hand, ECF No. 61 at 4, and Plaintiff has put forth evidence from which a reasonable jury could conclude any such "swipe" occurred before the Officer Defendants' "yank[ing] [Plaintiff] down to the

6

pavement," ECF No. 73 at 5. *See Surat*, 52 F.4th at 1274 ("[A] jury could conclude [the plaintiff] committed both crimes in a particularly harmless manner where *the only physical force* she used was attempting to pry [an officer's] fingers off of her arm and *pawing* at his arms." (citation modified)); *Krueger v. Phillips*, 154 F.4th 1164, 1198 (10th Cir. 2025) (concluding first *Graham* factor favored plaintiff where plaintiff had been "pulled over" for misdemeanor offenses and that when viewing the facts in her favor "[the officer] grabbed [the individual] *first* and began to remove him from the car, and *only then* did [he] grab" the officer (citation modified)). Indeed, a reasonable jury could conclude that, throughout his encounter with Defendant Park, Plaintiff's physical actions, were "particularly . . . harmless." *Surat*, 52 F.4th at 1274.

In sum, the Court agrees with Plaintiff that the first *Graham* factor favors him. *See, e.g.*, ECF No. 73 at 24–25; *Krueger*, 154 F.4th at 1198 ("Because these are misdemeanor offenses, this first factor weighs in the Estate's favor." (citation modified)); *Surat*, 52 F.4th at 1274 ("The first *Graham* factor—'the severity of the crime at issue'—favors [the plaintiff] because her conduct of resisting arrest and obstructing a peace officer, were not severe crimes." (citation modified)).

**Immediate Safety Threat.** Defendants argue that the second *Graham* factor favors them because "from the perspective of the Officers" Plaintiff was "agitated . . . struck Officer Park . . . repeatedly refused to obey commands [and] threatened" the Officer Defendants. ECF No. 61 at 22; *see also* ECF No. 83 at 13. The Court disagrees. Defendants have failed to show the second *Graham* factor favors them.

7

Consideration of Defendants' own evidentiary submissions reveals why they err in arguing this *Graham* factor favors them. Officer Hanzlicek's body worn camera footage—submitted by Defendants—shows that in the moments preceding Officer Park's use of force against Plaintiff that Plaintiff was eating a burrito. *See, e.g.,* Ex G. to ECF No. 61 at 13:59. The same footage shows that, when Officer Park extended the citation to Plaintiff, Plaintiff backed away with his hands *in the air. Id.* at 14:16. When Officer Park extended the citation, Plaintiff swatted Officer Park's hand away. *Id.* at 14:19. And in response to this swat, Officer Park grabbed the right sleeve of Plaintiff's blazer, turning Plaintiff over before eventually pushing him to the ground. *Id.* at 14:19–14:26. Indeed, Officer Park's own body worn camera footage shows that Officer Park grabbed Plaintiff following his swat, Ex. H to ECF No. 61 at 6:50–6:59, turned Plaintiff, pushed Plaintiff against a wall and then placed his body on top of Plaintiff, *id.* at 6:59–7:08. *See Krueger*, 154 F.4th at 1198 ("Even where a suspect uses minimal physical force against an officer, where an officer is not placed in in immediate danger, slamming a suspect violently to the ground is not reasonable." (citation modified)).

This evidence alone is sufficient to show that a reasonable jury could conclude that Plaintiff did not pose any immediate safety threat—or, at a minimum, create a triable issue of material fact as to whether Plaintiff posed any immediate safety threat. Indeed, a reasonable jury could conclude that all Plaintiff did, after attempting to eat his burrito, was swat Officer Park's hand away, rather than placing hands on Officer Park in any threatening or unsafe manner. *See, e.g., Krueger*, 154 F.4th at 1198. And to the extent that Plaintiff stated he "was not signing anything," Ex. G to ECF No. 61 at 13:56, would

8

not "take" the citation, *id.* at 14:03, and then asked Officer Hanzlicek, "[a]re you serious right now," *id.* at 14:17–14:19, a reasonable jury could conclude that these were not threats against the Officer Defendants *at all*. *See Jordan*, 73 F.4th at 1173 (concluding second *Graham* factor favored plaintiff "given that there [was] no evidence that he had access to a weapon or that he *threatened harm* to himself or others" (citation modified)); *Surat*, 52 F.4th at 1275 ("Although [the [plaintiff] used minimal physical force against [the officer] by attempting to pry his fingers off of her arm and *pawing at him*, this did not place [the officer] or others in immediate danger." (citation modified)).

Accordingly, for the reasons set forth above, the second *Graham* factor weighs in favor Plaintiff, not Defendants. *See, e.g., Packard v. Budaj*, 86 F.4th 859, 867 (10th Cir. 2023); *Jordan*, 73 F.4th at 1173; *Surat*, 52 F.4th at 1275. Defendants' characterization of Plaintiff's supposed "threat," ECF No. 61 at 21, does not overcome what the Officer Defendants' body cam footage plainly shows—or obviate what are, at a minimum, clear factual disputes. Regardless—and notwithstanding how the footage demonstrates that a reasonable jury could find that Plaintiff did not pose an immediate safety risk—at this stage the Court must draw all factual inferences in Plaintiff's favor, bolstering the Court's conclusion that this factor favors Plaintiff. *See, e.g., Harmon*, 134 F.4th at 1127 ("[Courts] must view the evidence and reasonable inferences favorably to [the plaintiff].").

**Resisting Arrest or Evading.** Defendants argue the third *Graham* factor favors them in a single sentence without any evidentiary support: "In particular, despite being on the ground with Officers surrounding him, Plaintiff not only attempted to get up and 'flee,' but he was also (admittedly) actively resisting." ECF No. 61 at 22. The Court disagrees.

9

Officer Hanzlicek's body worn camera footage shows that, after Officer Park threw Plaintiff to the ground, Plaintiff extended his arms and then raised them so that Officer Park could handcuff Plaintiff. Ex. G to ECF No. 61 at 14:27–14:35. A reasonable jury could certainly find that Plaintiff was not impermissibly resisting arrest, particularly where Defendant Hanzlicek's body cam footage shows Plaintiff did not resist the Officer Defendants when they raised his arms and placed him in handcuffs, as well as that Plaintiff was completely immobilized when Defendant Park sprayed the OC spray into Plaintiff's eyes. *See* Ex. G to ECF No. 61 at 14:15–15:00. Indeed, Plaintiff even announced that he was not resisting arrest, in response to the Officer Defendants' conclusory statements to the contrary. *Id.* at 14:29–14:31; ECF No. 61 at 4.

Accordingly, considering the footage and summary judgment record as a whole, and drawing all inferences from it in Plaintiff's favor, the third *Graham* factor weighs in Plaintiff's favor.

\* \* \*

In sum, all three *Graham* factors favor Plaintiff. And because they do, summary judgment on Plaintiff's federal and state excessive force claims against Defendant Park is improper. *See Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1307 (D. Colo. 2025).

The Court makes one final note. Defendants contend that Plaintiff's claims are barred by qualified immunity. *See* ECF No. 61 at 24. In advancing this contention, Defendants offer one paragraph of descriptive legal principles. *See id.* at 25.[*]

---

[*] Defendants then offer one paragraph of argumentation as to Plaintiff's arrest and trespassing claims, which for the reasons set forth above, do not survive summary judgment on a different basis, and so the Court need not address Defendants' qualified immunity arguments as to them.

Thus, the Court is left only with a few cursory sentences that even arguably concern qualified immunity's application to Plaintiff's excessive force claims:

> Furthermore, Plaintiff struck Officer Park and refused to follow lawful commands. There was no constitutional violation and Plaintiff can provide no case law establishing otherwise. Both Officer Park and Officer Hanzlicek are entitled to qualified immunity for Plaintiff's arrest.
>
> As for the application of OC, again, there was no constitutional violation because of Plaintiff's actions. The minimal use of force was reasonable given the circumstances, Plaintiff [sic] resistance to arrest, and combative actions.

ECF No. 61 at 25–26 (citation modified).

Put to the side that a reasonable jury could find facts that obviate Defendants' arguments "Plaintiff struck Officer Park" and that Officer Park used a "minimal amount" of force. *Id.* These sentences are insufficient to adequately brief the issue of qualified immunity, and so the Court declines to consider Defendants' qualified immunity arguments. *See, e.g., Berryman v. Niceta*, 143 F.4th 1134, 1140 (10th Cir. 2025) ("But to trigger the plaintiff's two-part [qualified immunity] burden, a defendant must first adequately present the qualified-immunity defense." (citation modified)); *id.* at 1140–41 ("[W]here a defendant makes only a bare assertion of qualified immunity, the plaintiff bears no burden to satisfy the ordinary two-prong test." (citation omitted)). The Court's conclusion is bolstered by the nature of Defendants' briefing, where Defendants refer to, and appear to essentially incorporate, *summary judgment* arguments into their cursory *qualified immunity* assertion. *See Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1221 (10th Cir. 2025) ("[T]he argument that a plaintiff fails to raise a genuine dispute of material fact as to whether her constitutional rights were violated, standing alone, falls short of explicitly

11

raising a qualified immunity defense."). Defendants' efforts to salvage them in reply are unavailing. *See* ECF No. 83 at 14; *Est. of Esquivel by & through Montalvan v. Williams*, No. 1:24–cv–02213–CNS–TPO, 2025 WL 3687390, at *3 (D. Colo. Dec. 19, 2025) ("Defendant's contentions *in reply* fail to salvage his bare argument or warrant the Court's engagement with it." (citation modified)).

Accordingly, the Court concludes that Defendants have failed to adequately present the qualified immunity defense, and that it is no bar to Plaintiff's excessive force claims. *See Berryman*, 143 F.4th at 1140.

### C. First Amendment Retaliation

Plaintiff agrees to dismiss his § 1983 claim for "First Amendment Retaliation" against Defendant Park. ECF No. 73 at 35. Accordingly, the Court need not analyze Defendants' arguments attendant to this claim, and the Court dismisses this claim based on Plaintiff's representation. *See, e.g.,* ECF No. 61 at 22.

### D. Municipal Liability

In his response brief, Plaintiff specifies that he asserts "two primary theories of *Monell* [municipal] liability": (1) a "failure to train and supervise" Defendant Park "with respect to his dangerous and repetitive misuse of OC spray;" and (2) a "custom, pattern, and practice of FCPS ratifying and condoning the use of" officers' excessive force. ECF No. 73 at 31. Considering each of Plaintiff's theories in turn, the Court agrees with Defendants that Plaintiffs' municipal liability claim does not survive summary judgment. *See, e.g.,* ECF No. 83 at 15–16. In doing so, the Court observes that the parties agree as to the basic doctrinal framework governing its analysis of Plaintiff's municipal liability

12

claim. *See, e.g.,* ECF No. 61 at 26; ECF No. 73 at 30; *Est. of Hebert by & through Bourgeois v. Marinelli*, No. 1:22–cv–02582–CNS–STV, 2023 WL 4744927, at *10 (D. Colo. July 25, 2023) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)).

***Failure to Train and Supervise.*** First, Plaintiff's *failure to train* theory of municipal liability appears premised—at least in part—on Defendant Park's prior encounters with other citizens against whom Plaintiff contends he used excessive force. ECF No. 73 at 32. But, fatal to Plaintiff's *failure to train* theory of municipal liability, Plaintiff acknowledges that Defendant Park, like other officers, received training as to the proper use of OC spray. *See id.* at 33 ("Despite FCPS *training* their officers that three feet is the minimum safe distance to employ OC spray and that spraying any closer carries a risk of permanent damage to the eye and serious bodily injury, Park's violation of the rule was time and time again deemed reasonable and approved." (emphasis added)). This acknowledgment is consistent with testimony from Defendant Park's deposition:

> Q. Okay. Yet you [Defendant Park] engaged in *conduct that you were trained* would subject [Plaintiff] to a risk of that type of [ocular] injury, correct?
>
> A. Correct.

ECF No. 73-1 at 50 (emphasis added).

Given that Plaintiff acknowledges and does not dispute as a factual matter Defendant Park received training as to the proper distance from which to administer OC spray—and the conditions under which to do so—the Court agrees with Defendants that Plaintiff's *failure to train* theory of municipal liability does not survive summary judgment.

13

*See, e.g.,* ECF No. 61 at 31; ECF No. 73 at 7; *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) ("[A]ny reasonable fact finder would have to conclude that—far from exhibiting deliberate indifference . . . the county actively sought to protect [the plaintiff's] rights and it was (only) [a defendant's] improper actions, taken in defiance of county policy, that caused [the plaintiff's] injuries."). *Cf. Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1049 (10th Cir. 2022) (concluding a reasonable jury could find that county had "unofficial policies or customs of failing to medically train jail employees" where "multiple employees testified that they received *no* meaningful medical training" (emphasis added)). Indeed, the gravamen of Plaintiff's *failure to train* argument is fundamentally that Defendant Park failed to adhere to proper OC spray training and that his supervisors ratified his conduct, not that Defendants had *knowledge* that such training was *inadequate* and failed to act in light of this knowledge. *See, e.g., Whitewater v. Goss*, 192 F. App'x 794, 799 (10th Cir. 2006) ("The evidence here establishes only that the [officers] were trained, and no evidence was presented that the training was deficient under prevailing norms."); *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) ("Instead [Plaintiff] merely enumerates the multiple ways in which he contends the [o]fficers were inadequately trained, but without proffering any evidence of knowledge of the purported deficiencies on the part of the [c]ity."); *Est. of Lobato by & through Montoya v. Correct Care Sols., LLC*, No. 15–cv–02718–PAB–STV, 2017 WL 1197295, at *7 (D. Colo. Mar. 31, 2017) ("Notice of particular deficiencies in a training program is the crux of a failure-to-train theory." (citation modified)); ECF No. 61 at 31.

*Second*, Plaintiff's *failure to supervise* theory of municipal liability appears premised on the ratification of Defendant Park's prior instances of excessive force against other individuals—i.e., his "pattern of unlawful behavior" that his supervisors "condone[d]." *See* ECF No. 73 at 32–33. This theory—which is premised more on Defendants' purported ratification of Defendant Park's conduct than any *supervisory* failures—fails for substantially the same reason as Plaintiff's *failure to train* theory of municipal liability. *See Est. of Kracht v. City of Sterling, Colorado*, No. 22–cv–01081–NYW–STV, 2022 WL 16650152, at *5 (D. Colo. Nov. 3, 2022) ("The failures to 'train' or 'supervise' are so similar that they are discussed together and require the same elements." (citation modified)). Indeed, "'[d]eliberate indifference' for purposes of failure to train or supervise ordinarily necessitates showing a pattern of similar constitutional violations by *untrained* employees"—not trained employees who fail to adhere to or disregard that training with their supervisors' purposed approval. *Rehberg v. City of Pueblo*, No. 10–cv–00261–LTB–KLM, 2012 WL 1326575, at *4 (D. Colo. Apr. 17, 2012) (citation modified); *Kracht*, 2022 WL 16650152, at *5 (explaining the same). *Cf.* ECF No. 73 at 33; ECF No. 61 at 32.

**Ratification.** Next, Plaintiff argues that—consistent with some of his own *failure to train* and *failure to supervise* briefing—that his *ratification* theory of municipal liability survives summary judgment because he has alleged "at least 8 other lawsuits in the several years preceding Mr. Kulas's where in FCPS officers employed excessive force" and in which supervisors "reviewed and expressly approved of the officers' conduct," none of whom "were ever disciplined." ECF No. 73 at 34. Thus, according to Plaintiff, the

15

"City's systemic *pattern* of ratification" gives rise to a viable theory of municipal liability. *Id.* (emphasis added).

But this misunderstands the Court's ratification inquiry. "A municipality may be liable for *an employee's* unconstitutional conduct under § 1983 if it ratifies *that employee's unconstitutional conduct*." *Kracht*, 2022 WL 16650152, at *4 (citation modified). In other words, the Court's inquiry is not focused on any broad, *generalized* pattern of ratification—the Court is focused on a policymaker's ratification of Defendant Park's use of force. *See id.*; *Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010) ("[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions."). And to survive summary judgment, Plaintiff must identify evidence—and, for that matter, adequately argue—that a final policymaker approved the conduct underlying Defendant Park's use of excessive force against Plaintiff. *See, e.g., Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) ("[I]f a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers *approve* a subordinate's *decision and the basis for it*, their ratification will be chargeable to the municipality." (citation modified); *id.* (concluding ratification allegations were deficient where plaintiffs "d[id] not allege that [sheriff sued in official capacity] approved the underlying search that form[ed] the basis of their § 1983 claim"); *Gunn v. Carter*, No. 13–cv–2197–WJM–MEH, 2016 WL 8446261, at *2 (D. Colo. Oct. 24, 2016) ("[I]nadequately briefed arguments are deemed waived." (citation modified)). Because Plaintiff has done

16

neither, summary judgment in Defendants' favor as to Plaintiff's *ratification* theory of municipal liability is proper.

* * *

For the reasons set forth above, because all of Plaintiff's theories of municipal liability fail, summary judgment as to Plaintiff's claim premised on municipal liability is proper.

### E.  Defendant Hanzlicek's Failure to Intervene

The parties dispute whether Defendant Hanzlicek can be liable for "failing to intervene" as to the use of excessive force a reasonable jury could conclude Defendant Park exerted against Plaintiff. *See, e.g.,* ECF No. 73 at 34; ECF No. 61 at 17–18. The Court agrees with Plaintiff that, given his excessive force claim against Defendant Park survives summary judgment, a reasonable jury could also conclude that Defendant Hanzlicek failed to intervene as to Defendant Park's use of force against Plaintiff. *See* ECF No. 73 at 34.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022) (citation modified); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (observing this principle is "clearly established"). "A plaintiff states a constitutional violation in the form of failure to intervene by [demonstrating] that (1) a government officer violated his constitutional rights, (2) a different government actor (the defendant) observed or had

reasons to know about that constitutional violation, and (3) the defendant had a realistic opportunity to intervene, but failed to do so." *Id.* (citation omitted).

Plaintiff has created material factual disputes as to—and a reasonable jury could certainly conclude that he has satisfied—each of these elements.

*First*, as discussed extensively above, a reasonable jury could conclude that Defendant Park used excessive force against Plaintiff in violation of his constitutional rights. *See id.*; *see also id.* at 617 (observing failure-to-intervene claims are applicable to underlying "excessive force violations"). This conclusion is sufficient to address all of Defendants' *failure to intervene* arguments, as Defendants focus solely on what they contend is the absence of any underlying constitutional violation of which Defendant Hanzlicek was or could be aware. *See* ECF No. 61 at 18 ("[A]gain, because there is no constitutional violation."); *United States v. Burkholder*, 816 F.3d 607, 620 n.11 (10th Cir. 2016).

*Second*, a reasonable jury could conclude that Defendant Hanzlicek "observed or had reasons to know" that Defendant Park used excessive force against Plaintiff. *Bledsoe*, 53 F.4th at 616. Simply stated, Defendant Hanzlicek's body worn camera footage—submitted by Defendants—shows that in the moments preceding Officer Park's use of force against Plaintiff that Defendant Hanzlicek was standing right there and thus would have knowledge of Defendant Park's use of force against Plaintiff—particularly Defendant Park's use of the OC spray against Plaintiff. *See, e.g.,* Ex. G to ECF No. 61 at 14:10–14:25; 14:50–15:00. Defendant Park's body worn camera footage indicates the same. *See* Ex. H to ECF No. 61 at 6:54–7:05. Indeed, as Plaintiff observes, a reasonable

18

jury could conclude that Defendant Hanzlicek assisted Defendant Park in effectuating the use of force against Plaintiff. *See* Ex. G to ECF No. 61 at 14:25–14:50; ECF No. 73 at 34. This is sufficient evidence for a reasonable jury to conclude that the second element of *failure to intervene* liability is satisfied. *See Bledsoe*, 53 F.4th at 616; ECF No. 73 at 34.

*Third*, a reasonable jury could conclude that Defendant Hanzlicek had a "realistic opportunity to intervene, but failed to do so." *Bledsoe*, 53 F.4th at 616. Again: Defendant Hanzlicek's own body worn camera footage shows he was standing by as Defendant Park used force against Plaintiff. *See* Ex. G to ECF No. 61 at 14:10–14:25; 14:50–15:00. A reasonable jury could certainly find from this that Defendant Hanzlicek did nothing to intervene or stop Defendant Park's use of force against Plaintiff. *See Bledsoe*, 53 F.4th at 616; *Vondrak*, 535 F.3d at 1210 ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury." (citation modified)).

Accordingly, Plaintiff's federal and state *failure to intervene* claims against Defendant Hanzlicek survive Defendants' summary judgment motion. *See Bledsoe*, 53 F.4th at 616; *Shash*, 770 F. Supp. 3d at 1307; C.R.S. § 13–21–131.

### III.    CONCLUSION

Consistent with the above analysis, Defendants' Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56, ECF No. 61, is GRANTED IN PART and DENIED IN PART.

DATED this 21st day of January 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge